718 P.2d 184

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a political subdivision of the State of Arizona, and Los Angeles Department of Water and Power, a department of the government of the City of Los Angeles, a municipal corporation, Plaintiffs-Appellants,**

v.

**CITY OF ST. JOHNS, Arizona, a municipal corporation, Defendant-Appellee.**

**No. 18415–PR.**

Supreme Court of Arizona, En Banc.

April 16, 1986.

Jennings, Strouss & Salmon by Stephen A. Myers, David J. Estes and Kevin J. Worthen, Phoenix, for plaintiffs-appellants.

Platt & Hall, P.C. by Mitchel D. Platt and R. John Lee, St. Johns, for defendant-appellee.

HAYS, Justice.

This is a petition for review of a memorandum decision of the court of appeals, which affirmed the granting of summary judgment in favor of the City of St. Johns (City) and declared its emergency annexation ordinance valid. *Salt River Project Agricultural Improvement & Power District v. City of St. Johns, Arizona* (Memorandum Decision, 1 CA–CIV 7261, filed Sept. 5, 1985). We have accepted review to determine whether the annexation statute, A.R.S. § 9–471 *et seq.*, precludes a city from giving immediate effect to an annexation ordinance by invoking its power to enact emergency ordinances. A.R.S. § 19–142(B). We accepted review under Rule 23, Ariz.R.Civ.App.Proc., 17A A.R.S., and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

On July 29, 1980, the City of St. Johns passed Ordinance 37 (Ordinance) as an emergency measure, to be effective immediately. This ordinance annexed land surrounding the Coronado Generating Station in "strip" fashion.[1] On July 31, 1980, new provisions in the annexation statute, A.R.S. § 9–471(G), (H), (I), and (J), became effective and basically banned strip annexations of this type.

On August 26, 1980, the plaintiffs, Salt River Project Agricultural Improvement and Power District and the Los Angeles Department of Water and Power (SRP), filed a petition to set aside the annexation and have it declared invalid. In response to a motion for summary judgment by the City, SRP acknowledged that their substantive challenges to the enactment of Ordinance 37, which related to alleged violations of Arizona's "open meeting law" and purported failures on the part of the City to satisfy the petition and valuation requirements set forth in A.R.S. § 9–471, would fail. SRP alleged, however, that the ordinance was adopted as an emergency measure to improperly circumvent the cutoff date of July 31, 1980 for strip annexations.

---

1. On April 22, 1980, the City had attempted a bulk annexation of land adjacent and contiguous to the City, including parts of the generat-ing station; however, that ordinance was declared null and void on October 21, 1981.

The issue we review is: Whether A.R.S. § 9–471(D) precludes a city from giving immediate effect to an annexation ordinance by invoking its emergency clause powers.

The emergency clause at issue provided: WHEREAS, it is necessary for the preservation of the peace, health and safety of the City of St. Johns that this ordinance become immediately effective, an emergency is declared to exist, and this ordinance shall be effective immediately upon its passage and adoption.

A.R.S. § 19–142(B) sets forth the circumstances under which a city may enact emergency ordinances:

No city or town ordinance, resolution or franchise shall become operative until thirty days after its passage by the council and approved by the mayor, ... except measures necessary for the immediate preservation of the peace, health or safety of the city or town, but an emergency measure shall not become immediately operative unless it states in a separate section the reason why it is necessary that it should become immediately operative, and unless it is approved by the affirmative vote of three fourths of all the members elected to the city or town council, taken by ayes and noes, and also approved by the mayor.

In *Burton v. City of Tucson*, 88 Ariz. 320, 356 P.2d 413 (1960), we held that a provision of the City of Tucson charter similar to A.R.S. § 19–142(B) could be utilized in the adoption of annexation ordinances. Such emergency ordinances would be effective immediately upon adoption. The effect of this ruling was to allow the City of Tucson to pass an ordinance which would not be vulnerable to attacks by residents of the area annexed since the ordinance was final upon adoption. *Burton v. City of Tucson*, 88 Ariz. at 326, 356 P.2d at 417.

Following our decision in *Burton*, A.R.S. § 9–471 was amended to include sections (C) and (D) which read:

C. Any city or town, the attorney general, the county attorney, or other interested party may upon verified petition move to question the validity of the annexation for failure to comply with the provisions of subsection A, paragraphs 1 and 2. [Outlining procedures for proper petitions, valuation of property and map of area to be annexed]. The petition shall set forth the manner in which it is alleged the city or town has failed to comply with the provisions of subsection A, paragraphs 1 and 2, *and shall be filed within thirty days of the first reading of the ordinance annexing the territory* by the governing body of the city or town and not otherwise. The burden of proof shall be upon the petitioner to prove the material allegations of his verified petition. No action shall be brought to question the validity of an annexation ordinance unless brought *within the time* and for the reasons provided in this section.... (emphasis added).

D. *The annexation shall become final after the expiration of thirty days from the first reading of the ordinance* annexing the territory by the city or town governing body, provided the annexation ordinance has been finally adopted in accordance with the procedures established by statute, charter provisions, or local ordinances, whichever is applicable, subject to the review of the court to determine the validity thereof if petitions in objection have been filed (emphasis added).

Added by 1967 Ariz.Sess.Laws ch. 93, § 1, effective June 12, 1967.

The effect of this amendment on our ruling in *Burton* was addressed by the Court of Appeals in *Gieszl v. Town of Gilbert*, 22 Ariz.App. 543, 529 P.2d 255 (1974). In *Gieszl*, the appeals court examined both A.R.S. § 9–142(B) and the new provisions of A.R.S. § 9–471, sections (C) and (D). Unable to harmonize the new thirty-day protest provision with A.R.S. § 19–142(B), *Gieszl* held that A.R.S. § 9–471 (C) and (D), being the more specific of the two statutes and the one later in time, controlled the time frame before an annex-

ation is final. 22 Ariz.App. at 546, 529 P.2d at 258. The court stated:

> We therefore hold that the emergency powers granted by A.R.S. § 19–142(B) to a municipality not having charter privileges are not effective as to an annexation ordinance passed pursuant to A.R.S. § 9–471 and that such an annexation ordinance does not become effective until 30 days after the first reading of the ordinance.

*Id.*

In the instant case, the Court of Appeals agreed with the trial court's attempt to harmonize both A.R.S. § 19–142(B) and A.R.S. § 9–471(C) and (D). Interpreting *Gieszl,* the trial court ruled that the emergency clause was a proper mechanism to preserve the date of the annexation's finality and yet still allow thirty days to challenge the action. We believe that this is an erroneous interpretation of *Gieszl.*

The two statutes cannot be harmonized in the manner suggested by the courts below. Annexation ordinances must be attacked before they are final:

> The right of a taxpayer to contest the validity of an annexation ordinance has historically in Arizona been a difficult one. See, Gieszl v. Town of Gilbert ... for a historical treatment of this subject. Suffice it here to say that unless the right was afforded a private citizen to attack an annexation ordinance prior to its passage such an ordinance could not be subject to judicial review, no matter how illegal.

*Citizens for Orderly Development & Environment v. City of Phoenix,* 112 Ariz. 258, 260, 540 P.2d 1239, 1241 (1975). *See also Burton v. City of Tucson,* 88 Ariz. at 326, 356 P.2d at 417 ("The annexation being complete, appellants were thereafter without status to challenge it...."); *Gorman v. City of Phoenix,* 70 Ariz. 59, 64, 216 P.2d 400, 403 (1950) ("A citizen may not attack an annexation ordinance after the same is complete ..."); *Rural/Metro Fire Dept., Inc. v. Pima County,* 122 Ariz. 554, 555, 596 P.2d 389, 390 (App.1979) ("It is well settled in this state that a private

citizen has no standing to attack the validity of a completed annexation"). Further, *Gieszl* recognized that the passage of an emergency annexation ordinance did not make the annexation immediately final: "We further hold that appellants, having filed a contest of that annexation *before it became final,* had standing to attack that annexation." (Emphasis added.) 22 Ariz. App. at 546, 529 P.2d at 258. It is not possible, therefore, that an emergency provision can make an ordinance final and yet still allow the annexation to be attacked. A municipality cannot enact an annexation statute as an emergency measure.

■ In ruling as we have, we evidence our agreement with *Gieszl* that *Burton v. City of Tucson, supra,* is no longer the law in Arizona. *Gieszl v. Town of Gilbert,* 22 Ariz.App. at 546, 529 P.2d at 258. The legislative intent in providing for a thirty-day period to contest the validity of an annexation ordinance *before it is final* is clear. Since, prior to the enactment of the amendment, it was normal for all nonemergency annexation ordinances not to be final for 30 days, the legislature must have intended to make this 30-day waiting period applicable in *all* cases by adopting § 9–471 (C) and (D). Thus, the legislative granting of the power to annex, given to a city or town, is expressly limited by the language of A.R.S. § 9–471 which provides that final annexation cannot be accomplished for thirty days following the first reading of the ordinance. A.R.S. § 9–471(D).

Having decided that the emergency powers clause of A.R.S. § 19–142(B) does not apply to make annexation ordinances immediately final, we must consider what effect this has on the validity of the instant ordinance. Ordinarily, it might be possible to hold that the emergency clause in Ordinance 37 could be excised and the rest of the ordinance still be preserved. However, this ordinance came on the eve of amendments banning "strip annexation" of exactly the type attempted in this ordinance.

■ The right to annex land is statutory in nature. "The extent of the right of municipalities to enlarge their boundaries

is dependent entirely on the legislature...." *City of Tucson v. Garrett,* 77 Ariz. 73, 76, 267 P.2d 717, 719 (1954); *see also Goodyear Farms v. City of Avondale,* 148 Ariz. 216, 714 P.2d 386 (1986). Since the statutory right to annex was changed before this ordinance could be final, we believe that, by enacting the 1980 amendments, the legislature essentially removed the power for the City of St. Johns to "strip annex." Since the City failed to annex this territory before July 31, 1980 and was powerless to do so after that date, the ordinance must fail.

The memorandum decision of the Court of Appeals is vacated. The judgment of the Superior Court is reversed and remanded with directions to enter judgment in favor of appellants, Salt River Project and Los Angeles Department of Water and Power.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.